**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**PENSACOLA DIVISION**

**CASE NO. 3:18-cv-571-RV-EMT**

JESSICA N. ROGERS, as personal representative

of the Estate of Jose F. Escano-Reyes, and as

parent and natural guardian of Y.C., a minor child,

Plaintiff,

v.

DEP. JOHN GADDIS in his individual capacity,

DEP. MICHELLE BAUMAN in her individual capacity,

and SHERIFF BOB JOHNSON, in his official capacity,

Defendants.

_____/


**[PLAINTIFF'S PROPOSED] JURY INSTRUCTIONS**


**TABLE OF CONTENTS**

## I.   PRELIMINARY INSRUCTIONS (GIVEN PRIOR TO TRIAL)

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|--------|-------------------|-----|-----------|
| 1.1 | General Preliminary Instructions | 2 | |
| 1.4 | Jury Questions | 11 | |
| 1.5 | Interim Statements | 13 | |

## II.  IN-TRIAL INSTRUCTIONS

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|---|---|---|---|
| 2.1 | Stipulations | 15 | |
| 2.2 | Use of Depositions [IF NECESSARY] | 17 | |
| 2.4 | Interim Statements | 18 | |
| 2.5 | Judicial Notice [IF NECESSARY] | 19 | |
| 2.6 | Use of Interrogatories [IF NECESSARY] | 20 | |
| 2.7 | In-Trial Instruction on News Coverage [IF NECESSARY] | 21 | |
| 2.8 | Civil *Allen* Charge [IF NECESSARY] | 22 | |

## III.  BASIC INSTRUCTIONS

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|---|---|---|---|
| 3.1 | Introduction | 26 | |
| 3.2.3 | The Duty to Follow Instructions – Government Entity or Agency Involved | 27 | |
| 3.3 | Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court | 29 | |
| 3.4 | Creditability of Witnesses | 31 | |
| 3.5.1 | Impeachment of Witnesses Because of Inconsistent Statements | 33 | |
| 3.6.1 | Expert Witness | 35 | |
| 3.7.1 | Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence | 36 | |
| 3.8.1 | Duty to Deliberate When Only the Plaintiff Claims Damages | 38 | |
| 3.9 | Election of Foreperson Explanation of Verdict Form[s] | 40 | |

## IV. COUNT SPECIFIC INSTRUCTIONS

### GROUP I: Counts I and II: Civil Rights – 42 U.S.C. § 1983 Claims - Against Defendants Gaddis and Bauman

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|--------|-------------------|----|-----------|
| 5.8.0 | Civil Rights – 42 U.S.C. § 1983 Claims – Fourteenth Amendment Claim – Pretrial Detainee Alleging Deliberate Indifference to Serious Medical Need | 45 | |
| 5.8.1 | Legal Causation Further Explained In Context of Suicide | 51 | |
| 5.8.2 | Deliberate Indifference Further Explained | 53 | |
| 5.8.3 | The Law Concerning Close Watch Logs of Suicidal Inmates | 54 | |
| 5.8.4 | The Law Concerning Failure to Follow Medical Directives or Implement Prescribed Treatments | 55 | |
| 5.8.5 | Deliberate Indifference Explained | 57 | |
| 5.8.6 | Entitlement to Punitive Damages for 42 U.S.C. § 1983 Claims | 59 | |
| 5.8.7 | No Punitive Damages Against the Jail | 61 | |

### GROUP II:  Count V: 42 U.S.C.  § 1983 against Sheriff Johnson in his official capacity (aka the "*Monell*" claim)

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|--------|-------------------|----|-----------|
| 5.10 | Civil Rights – 42 U.S.C. § 1983 Claims – Government Entity Liability (Incorporate into Instructions for Claims against Individual Defendants) | 63 | |

**GROUP III:  Counts VI and VII Under Florida Law Against Gaddis
and Bauman**

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|--------|-------------------|-----|------------|
| 6.1 | Issues on Plaintiff's Claims for Wanton and/or Willful Disregard for Human Rights and/or Safety | 68 | |
| 6.1.1 | Punitive damages for claims against Defendants Gaddis and Bauman | 70 | |

**GROUP IV:  Damages**

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|---|---|---|---|
| 7.1 | Compensatory Damages Civil Rights – 42 U.S.C. § 1983 Claims – Damages | 74 | |

**GROUP V:  Punitive Damages Amount Phase**

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|---|---|---|---|
| 8.1 | Federal Law of Punitive Damages – Determination of Amount | 79 | |
| 8.2 | Florida Law Punitive Damages – Determination of Amount | 81 | |

## I.    PRELIMINARY INSRUCTIONS (GIVEN PRIOR TO TRIAL)

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|--------|-------------------|-----|------------|
| 1.1 | General Preliminary Instructions | 2 | |
| 1.4 | Jury Questions | 11 | |
| 1.5 | Interim Statements | 13 | |

**1.1 General Preliminary Instruction**

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph or a videotape. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence</u>:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer

the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

<u>Credibility of witnesses</u>:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- · the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- · the witness's memory;

- · the witness's manner while testifying;

- · any interest the witness has in the outcome of the case;

- · any bias or prejudice the witness may have;

- · any other evidence that contradicts the witness's testimony;

- · the reasonableness of the witness's testimony in light of all the evidence; and

· any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

<u>Description of the case</u>:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff is Jessica Rogers as the personal representative of Jose Francisco Escaño-Reyes, also known as Fran, and she is suing on behalf of her minor child, **[child's name]**. Ms. Rogers is suing Defendants John Gaddis, Michelle Bauman, and Sheriff Bob Johnson, in his official capacity, all in connection with the death of **[child's name]**'s father, Mr. Fran Escaño-Reyes. Ms. Rogers claims Defendants Gaddis and Baumann were deliberately indifferent to Mr. Escaño-Reyes's medical/psychiatric needs and therefore violated his constitutional rights. She also contends that Defendants Gaddis and Bauman acted in a willful and wanton manner in violation of Florida law. Ms. Rogers is also bringing a claim against the Jail itself, for which Bob Johnson, the Sheriff of Santa Rosa County, is the Defendant. She contends that the Jail permitted certain customs or practices which violated Mr. Escaño-Reyes's constitutional rights. For all claims, Ms. Rogers contends that the Defendants' actions were the legal cause of Mr. Escaño-Reyes's death. All defendants deny all claims.

5

Burden of proof:

Ms. Rogers has the burden of proving her case by what the law calls a "preponderance of the evidence." That means Ms. Rogers must prove that, in light of all the evidence, what she claims is more likely true than not. So, if you could put the evidence favoring Ms. Rogers and the evidence favoring Defendants Gaddis, Bauman, and Johnson, in his official capacity, each on opposite sides of balancing scales, Ms. Rogers needs to make the scales tip to her side as to each of her claims. If Ms. Rogers fails to meet this burden as to any of the Defendants, you must find in favor of that Defendant.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that, in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you

understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

<u>Taking notes</u>:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Ms. Rogers will present her witnesses and ask them questions. After Ms. Rogers questions the witness, the defendants may ask the witness questions – this is called "cross-examining" the witness. Then the defendants will present their witnesses, and Ms. Rogers may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

[Note: Some judges may wish to give some instructions before closing arguments. See Fed. R. Civ. P. 51(b)(3).]

You'll then go to the jury room to deliberate.

**Source:** Eleventh Circuit Pattern Jury Instruction 1.1 General Preliminary Instruction (added "or a videotape" to first paragraph of subsection "what is evidence")

**Disposition:**

**Given:**_____

**Rejected:**____

**Modified:**_____

## **Annotations and Comments**

No annotations associated with this instruction.

**1.4 Jury Questions**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me, and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

- First, you must submit all questions in writing. Please don't ask any questions aloud.

· Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

· Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

**Source:** Eleventh Circuit Pattern Jury Instruction 1.4 Jury Questions

**Disposition:**

**Given:**_____

**Rejected:**____

**Modified:**_____

## Annotations and Comments

No annotations associated with this instruction.

**1.5 Interim Statements**

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

**Source:**  Eleventh Circuit Pattern Jury Instruction 1.5 Interim Statements

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**Annotations and Comments**

No annotations associated with this instruction.

## II.    IN-TRIAL INSTRUCTIONS

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|--------|-------------------|----|-----------|
| 2.1 | Stipulations | 15 | |
| 2.2 | Use of Depositions [IF NECESSARY] | 17 | |
| 2.4 | Interim Statements | 18 | |
| 2.5 | Judicial Notice [IF NECESSARY] | 19 | |
| 2.6 | Use of Interrogatories [IF NECESSARY] | 20 | |
| 2.7 | In-Trial Instruction on News Coverage [IF NECESSARY] | 21 | |
| 2.8 | Civil *Allen* Charge [IF NECESSARY] | 22 | |

**2.1 Stipulations**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.  The parties have agreed to the following facts in this case:

1.  At all relevant times, Defendants John Gaddis and Michelle Bauman were acting under color of law.

2.  At all relevant times, Defendant Bob Johnson, in his official capacity as Sheriff of Santa Rosa County, was the final policymaker.

3.  At all relevant times, Mr. Escaño-Reyes was a pre-trial detainee being held at the Santa Rosa County Jail.

4.  On April 2, 2016, Mr. Escaño-Reyes was placed onto suicide watch and moved to the medical section of the Jail.

5.  On April 2, 2016, Mr. Escaño-Reyes was determined to be a suicide risk, which is a serious medical need.

6.  On April 6, 2016, Mr. Escaño-Reyes was moved to Holding Cell 1, also referred to as ACR-1, in the Admissions, Classifications, and Release Unit of the Jail, known as ACR, which was used to hold inmates on suicide watch.

7.  On April 7, 2016, Mr. Escaño-Reyes was found hanging in Holding Cell 1.

8.  **[Child's name]** is a minor and is Mr. Escaño-Reyes's son.

**Source:**  Eleventh Circuit Pattern Jury Instruction 2.1 Stipulations; stipulations in

Joint Pretrial Order.

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**Annotations and Comments**

No annotations associated with this instruction.

## 2.2 Use of Depositions [IF NECESSARY]

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

**Source:**  Eleventh Circuit Pattern Jury Instruction 2.2 Use of Depositions

---

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

---

## Annotations and Comments

No annotations associated with this instruction.

**2.4 Interim Statements**

At the beginning of the trial, I told you that the lawyers might make short statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented before. Right now, [Mr./Ms.] [name of attorney] is going to make a short statement. Please remember that the statement you are about to hear – like all statements by the lawyers – is [Mr./Ms.] [name of attorney]'s view of the evidence or of what [he/she] anticipates the evidence will be, but isn't itself evidence.

**Source:** Eleventh Circuit Pattern Jury Instruction 2.4 Interim Statements

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**Annotations and Comments**

No annotations associated with this instruction.

**2.5 Judicial Notice [IF NECESSARY]**

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted [state the fact that the court has judicially noticed] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

**Source:**  Eleventh Circuit Pattern Jury Instruction 2.5 Judicial Notice

---

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

---

**Annotations and Comments**

No annotations associated with this instruction.

**2.6 Use of Interrogatories [IF NECESSARY]**

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers as though [name of party] gave the answers on the witness stand.

**Source:**  Eleventh Circuit Pattern Jury Instruction 2.6 Use of Interrogatories

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**Annotations and Comments**

No annotations associated with this instruction.

**2.7 In-Trial Instructions on News Coverage [IF NECESSARY]**

Reports about this trial or about this incident may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

**Source:**  Eleventh Circuit Pattern Jury Instruction 2.7 In-Trial Instructions on News Coverage

| |
|---|
| **Disposition:**<br><br>**Given:**_____<br><br>**Rejected:**_____<br><br>**Modified:**_____ |

**Annotations and Comments**

No annotations associated with this instruction.

**2.8 Civil *Allen* Charge [IF NECESSARY]**

Members of the jury:

I'm going to ask you to continue your deliberations to reach a verdict. Please consider the following comments.

This is an important case. The trial has been expensive in terms of time, effort, money, and emotional strain to both the plaintiff and the defendant. If you fail to agree on a verdict, the case remains open and may have to be tried again. A second trial would be costly to both sides, and there's no reason to believe either side can try it again better or more exhaustively than they have tried it before you.

Any future jury would be selected in the same manner and from the same source as you. There's no reason to believe that the case could ever be submitted to a jury of people more conscientious, more impartial, or more competent to decide it – or that either side could produce more or clearer evidence.

It's your duty to consult with one another and to deliberate with a view to reaching an agreement – if you can do it without violating your individual judgment. You must not give up your honest beliefs about the evidence's weight or effect solely because of other jurors' opinions or just to return a verdict. You must each decide the case for yourself – but only after you consider the evidence with your fellow jurors.

You shouldn't hesitate to reexamine your own views and change your opinion if you become convinced it's wrong. To bring your minds to a unanimous result, you

must openly and frankly examine the questions submitted to you with proper regard for the opinions of others and with a willingness to reexamine your own views.

If a substantial majority of you is for a verdict for one party, each of you who holds a different position ought to consider whether your position is reasonable. It may not be reasonable since it makes so little impression on the minds of your fellow jurors – who bear the same responsibility, serve under the same oath, and have heard the same evidence.

You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in light of the court's instructions on the law. You may take all the time that you need.

I remind you that in your deliberations, you are to consider the court's instructions as a whole. You shouldn't single out any part of any instructions including this one, and ignore others.

You may now return to the jury room and continue your deliberations.

**Source:**  Eleventh Circuit Pattern Jury Instruction 2.8 Civil *Allen* Charge

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

## <u>Annotations and Comments</u>

No annotations associated with this instruction.

### III.    BASIC INSTRUCTIONS

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|---|---|---|---|
| 3.1 | Introduction | 26 | |
| 3.2.3 | The Duty to Follow Instructions – Government Entity or Agency Involved | 27 | |
| 3.3 | Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court | 29 | |
| 3.4 | Credibility of Witnesses | 31 | |
| 3.5.1 | Impeachment of Witnesses Because of Inconsistent Statements | 33 | |
| 3.6.1 | Expert Witness | 35 | |
| 3.7.1 | Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence | 36 | |
| 3.8.1 | Duty to Deliberate When Only the Plaintiff Claims Damages | 38 | |
| 3.9 | Election of Foreperson; Explanation of Verdict Form[s] | 40 | |

## 3.1 Introduction

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

**Source:**  Eleventh Circuit Pattern Jury Instruction 3.1 Introduction

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

## Annotations and Comments

No annotations associated with this instruction.

**3.2.3 The Duty to Follow Instructions – Government Entity or Agency Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a governmental entity or agency is involved as a party must not affect your decision in any way. A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a governmental agency is involved, of course, it may act only through people as its employees; and, in general, a governmental agency is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the governmental agency.

**Source:**    Eleventh Circuit Pattern Jury Instruction 3.2.3 The Duty to Follow Instructions – Government Entity or Agency Involved

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

27

**<u>Annotations and Comments</u>**

No annotations associated with this instruction.

**3.3 Consideration of Direct and Circumstantial Evidence;
  Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**Source:**  Eleventh Circuit Pattern Jury Instruction 3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**Annotations and Comments**

No annotations associated with this instruction.

**3.4 Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness, I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

**Source:** Eleventh Circuit Pattern Jury Instruction 3.4 Credibility of Witnesses

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**Annotations and Comments**

No annotations associated with this instruction.

**3.5.1 Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**Source:**  Eleventh Circuit Pattern Jury Instruction 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

## **Annotations and Comments**

No annotations associated with this instruction.

**3.6.1 Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

**Source:** Eleventh Circuit Pattern Jury Instruction 3.6.1 Expert Witness

---

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

---

**Annotations and Comments**

No annotations associated with this instruction.

### 3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence

In this case it is the responsibility of the Plaintiff to prove every essential part of her claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiff.

When more than one claim is involved, you should consider each claim separately.   You should also consider claims separately against each of the Defendants.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claims by a preponderance of the evidence, you should find for the Defendant as to that claim.

**Source:** Eleventh Circuit Pattern Jury Instruction 3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence (modified by adding language about evaluating claims against each defendant separately)

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**<u>Annotations and Comments</u>**

No annotations associated with this instruction.

### 3.8.1 Duty to Deliberate When Only the Plaintiff Claims Damages

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**Source:**  Eleventh Circuit Pattern Jury Instruction 3.8.1 Duty to Deliberate When

Only the Plaintiff Claims Damages

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**<u>Annotations and Comments</u>**

No annotations associated with this instruction.

## 3.9 Election of Foreperson; Explanation of Verdict Form[s]

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict form]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me, and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**Source:** Eleventh Circuit Pattern Jury Instruction 3.9 Election of Foreperson; Explanation of Verdict Form[s]

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

## Annotations and Comments

No annotations associated with this instruction.

## IV.  COUNT SPECIFIC INSTRUCTIONS

### GROUP I: Counts I and II: Civil Rights – 42 U.S.C. § 1983 Claims - Against Gaddis and Bauman

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|--------|-------------------|-----|-----------|
| 5.8.0 | Civil Rights – 42 U.S.C. § 1983 Claims – Fourteenth Amendment Claim – Pretrial Detainee Alleging Deliberate Indifference to Serious Medical Need | 45 | |
| 5.8.1 | Legal Causation Further Explained In Context of Suicide | 51 | |
| 5.8.2 | Deliberate Indifference Further Explained | 53 | |
| 5.8.3 | The Law Concerning Close Watch Logs of Suicidal Inmates | 54 | |
| 5.8.4 | The Law Concerning Failure to Follow Medical Directives or Implement Prescribed Treatments | 55 | |
| 5.8.5 | Deliberate Indifference Explained | 57 | |
| 5.8.6 | Entitlement to Punitive Damages for 42 U.S.C. § 1983 Claims | 59 | |
| 5.8.7 | No Punitive Damages Against the Jail | 61 | |

### GROUP II:  Count V: 42 U.S.C.  § 1983 against Sheriff Johnson in his official capacity (aka the "*Monell*" claim")

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|--------|-------------------|-----|-----------|
| 5.10 | Civil Rights – 42 U.S.C. § 1983 Claims – Government Entity Liability (Incorporate into Instructions for Claims against Individual Defendants) | 63 | |

**GROUP III:  Counts VI and VII Under Florida Law Against Gaddis and Bauman**

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|---|---|---|---|
| 6.1 | Issues on Plaintiff's Claims for Wanton and/or Willful Disregard for Human Rights and/or Safety | 68 | |
| 6.1.1 | Punitive damages for claims against Defendants Gaddis and Bauman | 70 | |

**GROUP IV:  Damages**

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|---|---|---|---|
| 7.1 | Compensatory Damages Civil Rights – 42 U.S.C. § 1983 Claims – Damages | 74 | |

**GROUP V:  Punitive Damages Amount Phase**

| INSTR. | INSTRUCTION TITLE | PG | USE: G/R/M |
|---|---|---|---|
| 8.1 | Federal Law of Punitive Damages – Determination of Amount | 79 | |
| 8.2 | Florida Law Punitive Damages – Determination of Amount | 81 | |

I am now going to instruct you on the law that you must apply when considering the specific claims that Ms. Rogers has brought against the various Defendants on behalf of her son, **[child's name]**.  I will divide these instructions into three (3) groups according to the legal theory at issue: Group I consists of the federal claims against the individual defendants; Group II consists of a claim against the Jail, brought through Sheriff Johnson in his official capacity; and Group III consists of state-law claims against the individual defendants.

## **GROUP I:**

### **COUNTS I AND II: Civil Rights – 42 U.S.C. § 1983 Claims – AGAINST DEFENDANTS GADDIS AND BAUMAN**

In her first group of claims, Plaintiff Rogers seeks damages against Defendants Gaddis and Bauman for the deprivation of Mr. Escaño-Reyes's constitutional rights.

**5.8.0 Civil Rights – 42 U.S.C. § 1983 Claims –Fourteenth Amendment Claim – Pretrial Detainee Alleging Deliberate Indifference to Serious Medical Need**

The Plaintiff claims that Defendants John Gaddis and Michele Bauman, while acting under color of law, were deliberately indifferent to Mr. Escaño-Reyes's psychiatric needs and that their deliberate indifference legally caused his death in violation of his Fourteenth Amendment rights.

The United States Constitution provides that anyone who is imprisoned is entitled to necessary medical care, and a corrections officer violates that right by being deliberately indifferent to a pretrial detainee's known serious medical need.

To succeed on this claim, the Plaintiff must prove each of the following facts by a preponderance of the evidence:

**First**:    That Mr. Escaño-Reyes had a serious medical/psychiatric need by virtue of having been placed onto a suicide watch. This fact has been stipulated to, which means you must accept it as having been proven;

**Second**:  That Defendant Gaddis, Defendant Bauman, or both, knew that Mr. Escaño-Reyes had a  serious medical/psychiatric need that posed a risk of serious self-harm;

**Third**:    That  Defendant Gaddis, Defendant Bauman, or both, failed to provide necessary medical/psychiatric care for Mr. Escaño-Reyes's serious medical/psychiatric need in deliberate indifference to the risk of

serious self-harm;

**Fourth**:  That the deliberate indifference of Defendant Gaddis, Defendant Bauman, or both, was the legal cause of Mr. Escaño-Reyes's death; and

**Fifth:**    That Defendants Gaddis and Bauman acted under color of law. The parties have agreed that Defendants Gaddis and Bauman were acting under color of law, so you should accept that as a proven fact.

For the first element, Mr. Escaño-Reyes must prove a serious medical need. A "serious medical need" is a medical condition that a physician has diagnosed as requiring treatment or a medical condition that is so obvious that even a lay person would easily recognize the need for medical care. In either case, the medical condition must have posed a substantial risk of serious harm to Mr. Escaño-Reyes if left unattended.  Since the court has already determined that the risk of suicide or self-harm constitutes a serious medical need, you need not decide that issue.

For the second element, you must determine whether Defendant Gaddis, Defendant Bauman, or both, actually knew Mr. Escaño-Reyes had a serious medical/psychiatric need and required immediate attention. Put another way, it is not enough to show that Defendant Gaddis, Defendant Bauman, or both were careless or neglected his and/or her job duties and should have known about Mr. Escaño-Reyes's need. And it is not enough to show that a reasonable person

would have known of the medical/psychiatric need. However, you may find from circumstantial evidence that Defendant Gaddis, Defendant Bauman, or both, knew about the risk of serious self-harm. Furthermore, if the risk of serious self-harm was obvious, you may, based on that, find that Defendant Gaddis, Defendant Bauman, or both, knew about that risk.

For the third element, to decide whether Defendant Gaddis, Defendant Bauman, or both, were deliberately indifferent to Mr. Escaño-Reyes's serious medical/psychiatric need, you may consider all the relevant circumstances, including the seriousness of Mr. Escaño-Reyes's medical/psychiatric condition, the length of any delay in providing Mr. Escaño-Reyes medical/psychiatric care, and the reasons for any delay.

For the fourth element, you must determine whether Defendant Gaddis's conduct, Defendant Bauman's conduct, or both of their conduct, was the legal cause of Mr. Escaño-Reyes's death. Defendants Gaddis's and/or Bauman's conduct was the legal cause of Mr. Escaño-Reyes's death if Mr. Escaño-Reyes would not have died without Defendant Gaddis's and/or Defendant Bauman's conduct, or if Mr. Escaño-Reyes's injuries were worsened by Defendant Gaddis's and/or Defendant Bauman's conduct, and his death was a reasonably foreseeable consequence of Defendant Gaddis's and/or Defendant Bauman's conduct.

For the fifth element, you must decide whether Defendant Gaddis,

Defendant Bauman, or both, acted under color of law. The parties have agreed that Defendants Gaddis and Bauman were acting under color of law, so you should accept that as a proven fact.

NOTE: Model Jury Interrogatory Forms may be found in the appendices after the last civil rights jury instruction (Pattern Instruction 5.13) for use in actions brought under 42 U.S.C. § 1983. Three types of Model Jury Interrogatory Forms are provided: (A) a simplified Interrogatory Form for use in most civil right actions; (B) an Interrogatory Form for use in actions that do not require application of the Prison Litigation Reform Act, and (C) an Interrogatory Form for use in actions that do require application of the Prison Litigation Reform Act.

**Source:** Eleventh Circuit Pattern Jury Instruction 5.8.0 Civil Rights – 42 U.S.C. § 1983 Claims –Fourteenth Amendment Claim –Pretrial Detainee Alleging Deliberate Indifference to Serious Medical Need, As Modified By Law of the Case

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

1.    **Eighth and/ Fourteenth Amendment**

Claims involving the mistreatment of pretrial detainees while in custody are governed by the Fourteenth Amendment's Due Process Clause, and similar claims by convicted prisoners are governed by the Eighth Amendment's Cruel and Unusual Punishment Clause. *See, e.g.*, *Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003). Regardless, with respect "to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1574 (11th Cir. 1985); *see also Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("[D]ecisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."). Accordingly, this instruction applies to claims of deliberate indifference to serious medical need by both pretrial detainees and convicted prisoners.

2.    **Elements of Claim of Deliberate Indifference to Medical Need**

The elements of this claim are derived from *Youmans v. Gagnon*, 626 F.3d 557, 563-64 (11th Cir. 2010), and *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). Specifically, a plaintiff must satisfy an objective component by showing that she had a serious medical need and a subjective component by showing that the prison official acted with deliberate indifference to that need. *See, e.g.*, *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). To establish the subjective component, the plaintiff must prove (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than either mere or gross negligence. *Compare Youmans*, 626 F.3d at 564 (gross negligence), *with Mann*, 588 F.3d at 1307 (mere negligence); *see also Granda v. Schulman*, 372 F. App'x 79, 82 n.1 (11th Cir. 2010) (noting the intra-circuit split regarding the degree of negligence); *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (noting the split but concluding that *Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir. 1996), first stated the more-than-gross-negligence standard and, as the earliest case, controls).[1] The second and third elements of the instruction address the subjective component. To avoid the issue of whether more than mere or more than gross negligence is required, the instruction suggests factors the jury can consider in determining whether a defendant was deliberately indifferent. *See*

---

[1]    Based on the Eleventh Circuit's decision on the interlocutory appeal, it is law of the case that "more than mere negligence" is the correct standard here.

*Goebert*, 510 F.3d at 1327. The second element in the instruction acknowledges that subjective knowledge can be demonstrated in "the usual ways," such as "inference from circumstantial evidence," and that a factfinder may infer subjective knowledge from "the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Goebert*, 510 F.3d at 1327.

### 3.    Different Types of Claims for Deliberate Indifference to Medical Needs

The paragraph explaining the third element is well-suited for a claim based on a delay in providing medical care. *See Goebert*, 510 F.3d at 1326-27; *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). However, there are other ways in which defendants may fail to provide adequate medical care. *McElligott*, 182 F.3d at 1255. For example, a defendant may simply deny medical care altogether, *Lancaster v. Monroe Cty.*, 116 F.3d 1419, 1425 (11th Cir. 1997), *overruled on other grounds by LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009), or provide treatment "so cursory as to amount to no treatment at all," *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989). Thus, a court may wish to adjust the paragraph explaining the third element depending on the type of deliberate indifference claim at issue.

### 4.    Causation

For additional information regarding the instruction on causation, see the annotation following Pattern Instruction 5.3.

### 5.    Damages

For the damages instruction, see Pattern Instruction 5.13.

### 5.8.1  Legal Causation Further Explained In Context of Suicide

The autopsy report concludes that the medical cause of Mr. Escaño-Reyes's death was ligature hanging.  The issue for your determination, however, is whether Defendant Gaddis's conduct, Defendant Bauman's conduct, or both of their conduct, was the legal cause of Mr. Escaño-Reyes's death.  Where prison personnel directly responsible for inmate care have knowledge that an inmate has threatened suicide, their failure to take steps to prevent that inmate from committing suicide can amount to deliberate indifference.

**Source**: ECF 123 (Motion *In Limine* to Exclude Snider Testimony), Ex. A, at p.4 (Autopsy Protocol); *Rogers v. Santa Rosa County Sheriff's Office*, No. 20-13562 (11th Cir. Apr. 9, 2021) (slip op. at 10) (quoting *Greason v. Kemp*, 891 F.2d 829, 835-36 (11th Cir. 1990)); *see also* ECF 85 (Summary Judgment Order) at 17 and *passim*.

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

## Annotations and Comments

No annotations associated with this instruction.

**5.8.2    Deliberate Indifference Further Explained**

Ladies and Gentlemen of the Jury, it is clear by now that this case concerns deliberate indifference to serious medical/psychiatric needs.  On the issue of deliberate indifference, a person is deliberately indifferent to another's need for medical/psychiatric care if they know that the other person needs medical/psychiatric care and intentionally refuse to provide it.

**Source**: *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994) (*citing Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir.1989)).

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**Annotations and Comments**

No annotations associated with this instruction.

### 5.8.3  The Law Concerning Close Watch Logs of Suicidal Inmates

In considering whether Defendant Gaddis, Defendant Bauman, or both, failed to perform physical close watch checks of Mr. Escaño-Reyes while he was on suicide watch, you may infer, solely from the fact that no entry was made on the close watch form at a particular time, that no close watch took place at that time.

**Source:**  *Cagle v. Sutherland*, 334 F.3d 980, 984 & n. 6 (11th Cir. 2003).

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**Annotations and Comments**

No annotations associated with this instruction.

### 5.8.4 The Law Concerning Failure to Follow Medical Directives or Implement Prescribed Treatments

Deliberate indifference can arise when officials have been directed to follow medical instructions ordered by others. Deliberate indifference to a serious medical/psychiatric need may be shown by the failure to follow medical/psychiatric instructions.

**Source**: In some instances, deliberate indifference may arise from the failure of officials to respond to medical conditions that have never been formally diagnosed by a medical professional. In other instances, deliberate indifference can arise when officials have been directed to follow medical directives ordered by others. *See, e.g.*, *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985) (finding deliberate indifference where officers failed to provide materials prescribed by a doctor; "Deliberate indifference to a serious medical need may also be shown by 'intentionally interfering with the treatment once prescribed.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). *See also, e.g.*, *Colorado-Keen v. Rockdale Cty. Ga.* 775 Fed. Appx. 555, 568-69 (11th Cir. 2019) (holding, *inter alia*, that failure to follow supervisor's directives for medical treatment gave rise to jury-submissible inference of deliberate indifference to serious medical needs); *Durmer v. O'Carroll,* 991 F.2d 64, 68 (3d Cir. 1993) (deliberate indifference may be manifested by, *inter alia*, preventing an inmate from receiving recommended treatment for serious medical needs); *Douglas v. Jin*, 2014 WL 294889, *7 (W.D. Pa. 2014) ("a reasonable jury could find that Dr. Jin acted with deliberate indifference when he failed to comply with Dr. Eller's explicit post-operative instructions in November 2009 to remove the silicone oil that had been placed in Plaintiff's right eye within three to six months."); *Gil v. Reed*, 381 F.3d 649, 663 (7th Cir. 2004) (failure of prison doctor to follow specialist's treatment plan created inference of deliberate indifference).

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

## Annotations and Comments

No annotations associated with this instruction.

### 5.8.5  Deliberate Indifference Explained

Deliberate indifference may be proved in a variety of ways.  Outright failure or refusal to obtain medical treatment for a detainee rises to the level of deliberate indifference. And, even if some medical care is provided, an official's treatment can still constitute deliberate indifference in certain circumstances. For example, deliberate indifference includes grossly inadequate care, a decision to take an easier but less efficacious course of treatment, and medical care which is so cursory as to amount to no treatment at all.  A prison official may also act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours.

**Source:**  In order that the propositions appear -- *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997) ("Outright 'fail[ure] or refus[al]' to obtain medical treatment for the inmate' rises to the level of deliberate indifference."); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (deliberate indifference includes "grossly inadequate care," "a decision to take an easier but less efficacious course of treatment," and "medical care which is so cursory as to amount to no treatment at all."); *Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003) ("[A] prison official may [also] act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours.").

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**<u>Annotations and Comments</u>**

No annotations associated with this instruction.

**5.8.6   Entitlement to Punitive Damages for 42 U.S.C.  § 1983 Claims**

If you determine that Defendant Gaddis, Defendant Bauman, or both, are liable for deliberate indifference under federal law, you will also need to deliberate on whether Plaintiff is entitled to punitive damages against either or both of them.

If you find for Plaintiff and find that Defendant Gaddis, Defendant Bauman, or both, acted with reckless indifference to Mr. Escaño-Reyes's federally protected rights, the law allows you, in your discretion, to award Plaintiff punitive damages as a punishment for Defendant Gaddis, Defendant Bauman, or both, and as a deterrent to others.

The Plaintiff must prove by a preponderance of the evidence that she is entitled to punitive damages.

Defendant Gaddis, Defendant Bauman, or both, act with reckless indifference to the protected federal rights of Mr. Escaño-Reyes by engaging in conduct with a callous disregard for whether the conduct violates Mr. Escaño-Reyes's protected federal rights.


**Source:**      Eleventh Circuit Pattern Jury Instruction 5.13 Section on Punitive Damages

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

## **Annotations and Comments**

No annotations associated with this instruction.

**5.8.7  No Punitive Damages against the Jail**

Your deliberations at this stage are solely limited to whether punitive

damages should be awarded against Defendant Gaddis, Defendant Bauman, or both,

because federal law does not permit punitive damages to be assigned against the

Jail in this case.

**Source**:  Annotation to Eleventh Circuit Pattern Instruction 5.10 and annotation
number 3.

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**Annotations and Comments**

No annotations associated with this instruction.

**GROUP II:  Count V: 42 U.S.C. § 1983 against Sheriff Johnson in his official capacity (aka the "*Monell*" claim)**

For Ms. Rogers's claims against the Jail, she has sued Sheriff Johnson, in his official capacity as the Sheriff of Santa Rosa County.  The claim against the Jail, through Sheriff Johnson, in his official capacity, is separate and distinct from the claims against Defendants Gaddis and Bauman.  The claim against Sheriff Johnson seeks to hold the Jail liable by proving that certain customs or practices of the Jail violated Mr. Escaño-Reyes's constitutional rights.  I will now explain the law governing your evaluation of that claim.

**Source:** There is no source for this instruction, it is merely a transition to assist the jurors in understanding the difference between the claims against the Defendants and the Jail.

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**Annotations and Comments**

No annotations associated with this instruction.

**5.10 Civil Rights – 42 U.S.C. § 1983 Claims – Government Entity Liability (Incorporate into Instructions for Claims against Individual Defendants)**

Plaintiff claims that the Santa Rosa County Sheriff's Office, which employed Sheriff Johnson, is liable for violating Mr. Escaño-Reyes's constitutional rights. You should consider whether the Santa Rosa County Sheriff's Office is liable only if you find an employee or agent of the Santa Rosa County Sheriff's Office violated Mr. Escaño-Reyes's constitutional rights.

The Santa Rosa County Sheriff's Office is not liable for violating Mr. Escaño-Reyes's constitutional rights simply because it employed someone who violated them. Rather, the Santa Rosa County Sheriff's Office is liable if the Plaintiff proves that an official policy or custom of the Jail was a substantial factor in Mr. Escaño-Reyes's death. Put another way, the Santa Rosa County Sheriff's Office is liable if its official policy or custom was the moving force behind Mr. Escaño-Reyes's death.

An "official policy or custom" means:

(a)    A rule or regulation created, adopted, or ratified by the Santa Rosa County Sheriff's Office; or

(b)    A policy statement or decision made by the Santa Rosa County Sheriff's Office's policy-maker; or

(c)    A practice or course of conduct that is so widespread that it has acquired the force of law—even if the practice has not been formally

approved.

You may find that an "official policy or custom" existed if there was a practice that was so persistent, widespread, or repetitious that the Santa Rosa County Sheriff's Office's policy-maker either knew of it or should have known of it.

Sheriff Johnson is the Santa Rosa County Sheriff's Office's "policy-maker."

In this case, Plaintiff has identified three customs or practices of the Santa Rosa County Jail: 1) covering cell doors and windows of suicidal inmates; 2) using the only cell in the Jail with a partition permitting the hanging of a ligature and which cannot be fully viewed from the booking desk to house suicidal inmates; and 3) not requiring actual direct and continuous monitoring of suicidal inmates. The question is whether any of those policies, either alone or in any combination, were the moving force behind Mr. Escaño-Reyes's death.  If you answer this question "yes," your verdict should be for the Plaintiff; if you answer it "no," it should be for the Defendant.

**NOTE:** Model Jury Interrogatory Forms may be found in the appendices after the last civil rights jury instruction (Pattern Instruction 5.13) for use in actions brought under 42 U.S.C. §1983. Three types of Model Jury Interrogatory  Forms are provided: (A) a simplified Interrogatory Form for use in most civil right actions; (B) an Interrogatory Form for use in actions that do not require application  of the Prison Litigation Reform Act, and (C) an Interrogatory Form for use in actions

that do require application of the Prison Litigation Reform Act.

**Source:**  Eleventh Circuit Pattern Jury Instruction 5.10 Civil Rights – 42 U.S.C. § 1983 Claims – Government Entity Liability (Incorporate into Instructions for Claims against Individual Defendants)

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

## Annotations and Comments

### 1.   General Use

This instruction may be incorporated into any applicable § 1983 instructions when there is a claim against an individual defendant or defendants. In such case, jury interrogatories applicable to the government entity should be added if a special verdict form is used.

### 2.   Elements

This charge is derived from *AFL-CIO v. City of Miami, Fla.*, 637 F.3d 1178, 1187 (11th Cir. 2011). A government entity may not be held liable under § 1983 absent a finding that an individual, typically an individual named as a defendant in the case, violated the plaintiff's constitutional rights. *See, e.g.*, *Garczynski v. Bradshaw*, 573 F.3d 1158, 1170-71 (11th Cir. 2009).

### 3.   Punitive Damages

As discussed in the annotations following Pattern Instruction 5.13, *infra*, punitive damages may not be assessed against a government entity.

## GROUP III:  Counts VI and VII Under Florida Law Against Gaddis and Bauman

Ms. Rogers has also brought claims against Defendant Gaddis and Defendant Bauman under Florida law, alleging that they acted in a manner exhibiting wanton and willful disregard of Mr. Escaño-Reyes's human rights and safety, which was a substantial factor in his death.  I will now instruct you on the law governing those claims.

**6.1    Issues on Plaintiff's Claims for Wanton and/or Willful Disregard for Human Rights and/or Safety**

Plaintiff claims that Defendant Gaddis, Defendant Bauman, or both, are liable for damages from the death of Mr. Escaño-Reyes under Florida law.  The issues you must decide on Plaintiff's Florida-law claims against Defendants Gaddis and Bauman are:

(i)    Whether Defendant Gaddis, Defendant Bauman, or both, acted with wanton and/or willful disregard for Mr. Escaño-Reyes's human rights and/or safety on the morning of April 7, 2016 at the Santa Rosa County Jail; and,

(ii)    If so, whether such wanton and/or willful disregard for human rights and/or safety was a substantial factor in Mr. Escaño-Reyes's death.

"Wanton and/or willful disregard" is the equivalent of reckless conduct.

**Source:**  Florida Supreme Court Standard Civil Jury Instructions 401.18 (Issues on Plaintiff's Claim – General Negligence) as modified by the language of Florida Statue 768.28(9)(a).  ECF 85 (Summary Judgment Order), at 17 (citing *Williams v. City of Minneola*, 619 So. 2d 983, 986 (Fla. 5th DCA 1993)); *accord Rushton v. State*, 395 So. 2d 610, 612 (Fla. 5th DCA 1981) (noting that "willful and wanton" and "reckless" are "often used interchangeably").

| |
|---|
| **Disposition:**<br><br>**Given:**_____<br><br>**Rejected:**_____<br><br>**Modified:**_____ |

68

## <u>Annotations and Comments</u>

No annotations associated with this instruction.

### 6.1.1  Punitive damages for claims against Defendants Gaddis and Bauman

In addition to deciding whether Defendant Gaddis, Defendant Bauman, or both, are liable to Plaintiff under Florida law, you must decide whether either or both is liable to Plaintiff for punitive damages under Florida law.  I will now instruct you on the law governing that issue.

*a.     First stage of bifurcated punitive damages procedure:*

If you find for Plaintiff and against either or both Defendants, you must decide whether, in addition to compensatory damages, punitive damages are warranted as punishment to one or more of the Defendants and as a deterrent to others.

The trial of the punitive damages issue is divided into two parts. In this first part, you will decide whether the conduct of defendants whose conduct may warrant punitive damages is such that punitive damages are warranted. If you decide that punitive damages are warranted, we will proceed to the second part of that issue during which the parties may present additional evidence and argument on the issue of punitive damages. I will then give you additional instructions, after which you will decide whether, in your discretion, punitive damages will be assessed and, if

so, the amount.

*b(1).  Punitive damages for acts of an individual defendant:*

Plaintiff claims that punitive damages should be awarded against Defendant
Gaddis, Defendant Bauman, or both, for intentionally failing to conduct suicide-
prevention checks as mandated on Mr. Escaño-Reyes, or for doing so in a grossly
negligent fashion. Punitive damages are warranted against either or both Defendant
Gaddis and/or Bauman if you find by clear and convincing evidence that Defendant
Gaddis, Defendant Bauman, or both, were guilty of intentional misconduct or gross
negligence, which was a substantial cause of Mr. Escaño-Reyes's death. Under
those circumstances you may, in your discretion, award punitive damages against
Defendant Gaddis, Defendant Bauman, or both. If clear and convincing evidence
does not show such conduct by Defendant Gaddis, Defendant Bauman, or both, then
punitive damages are not warranted against either Defendant.

"Intentional misconduct" means that Defendant Gaddis, Defendant Bauman, or both
had actual knowledge of the wrongfulness of the conduct and there was a high
probability of injury or damage to Mr. Escaño-Reyes and, despite that knowledge,
he and/or she intentionally pursued that course of conduct, resulting in injury or

damage. "Gross negligence" means that Defendant Gaddis's, Defendant Bauman's, or both of their conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

"Clear and convincing evidence" is an intermediate standard of proof. It differs from the "preponderance of the evidence" in that it is more compelling and persuasive. As I have already instructed you, "preponderance of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

**Source:**  Florida Supreme Court Pattern Jury Instruction 503.1.

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**Annotations and Comments**

No annotations associated with this instruction.

## GROUP IV: DAMAGES

I have now instructed you on the legal standards that you must use to evaluate the claims of Plaintiff Rogers against the various Defendants. If your deliberations lead you to conclude that one or more of the Defendants are liable on one or more of these claims, you should proceed to deliberate on and assign a monetary amount for and as damages in favor of Plaintiff Rogers and against one or more of the Defendants that you have found liable. I will now instruct you on the law that you must use to determine the amount of damages.

**7.1    Compensatory Damages Civil Rights – 42 U.S.C. § 1983 Claims – Damages**

In this case, Plaintiff Rogers has brought this action on behalf of Mr. Escaño-Reyes's minor child, **[child's name]**, for loss of parental consortium, instruction and guidance, and for the mental pain and suffering he has and will continue to sustain as a result of his father's death.  In determining the amount of damages to award, you should assess the monetary amount that a preponderance of the evidence justifies as full and reasonable compensation for all of Plaintiff's damages—no more, no less. You must not impose or increase these compensatory damages to punish or penalize any Defendant. And you must not base these compensatory damages on speculation or guesswork. But compensatory damages are not restricted to actual loss of money— they also cover the mental and emotional aspects of the injury. Plaintiff Rogers does not have to introduce evidence of a monetary value for intangible things like mental and emotional pain. You must determine what amount will fairly compensate her for those claims. There is no exact standard to apply, but the award should be fair in light of the evidence.


[**Punitive Damages:**  If you find for Plaintiff and find that Defendant Gaddis, Defendant Bauman, or both acted with malice or reckless indifference to Mr. Escaño-Reyes's federally protected rights, the law allows you, in your discretion, to award Plaintiff punitive damages as a punishment for Defendant Gaddis, Defendant

Bauman, or both, and as a deterrent to others.

Plaintiff must prove by a preponderance of the evidence that she is entitled to punitive damages.

Defendant Gaddis, Defendant Bauman, or both, acts with malice if his and/or her conduct is motivated by evil intent or motive. Defendant Gaddis, Defendant Bauman, or both, acts with reckless indifference to the protected federal rights of Mr. Escaño-Reyes when Defendant Gaddis, Defendant Bauman, or both, engages in conduct with a callous disregard for whether the conduct violates Mr. Escaño-Reyes's protected federal rights.

If you find that punitive damages should be assessed, you may consider the evidence regarding Defendant Gaddis's, Defendant Bauman's, or both of their financial resources in fixing the amount of punitive damages to be awarded. [You may also assess punitive damages against one or more of the individual Defendants, and not others, or against one or more of the individual Defendants in different amounts.]]

## **Annotations and Comments**

1.    **The Prison Litigation Reform Act of 1995 (PLRA)**
Pursuant to the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical

injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). In the Eleventh Circuit, a prisoner or pretrial detainee who suffers a constitutional violation without more than a *de minimis* physical injury may recover nominal damages, but not compensatory or punitive damages. *See, e.g.*, *Brooks v. Warden*, 800 F.3d 1295, 1307-09 (11th Cir. 2015); *Al-Amin v. Smith*, 637 F.3d 1192, 1195-99 (11th Cir. 2011) (affirming district court's exclusion at trial of evidence concerning compensatory and punitive damages where there was no evidence plaintiff suffered a physical injury); *cf. Calhoun v. DeTella*, 319 F.3d 936, 940-41 (7th Cir. 2003) (noting the circuit split regarding the application of the PLRA's bar on damages). The "availability of declaratory or injunctive relief" as determined by the court is not affected by the PLRA. *Boxer X v. Harris*, 437 F.3d 1107, 1111 n.3 (11th Cir. 2006).

Although physical injury must be more than *de minimis* to recover compensatory and punitive damages under the PLRA, the physical injury need not be significant. *Harris v. Garner*, 190 F.3d 1279, 1286-87 (11th Cir. 1999), *vacated*, 197 F.3d 1059 (11th Cir. 1999), *reinstated in pertinent part*, 216 F.3d 970 (11th Cir. 2000). The Eleventh Circuit has not precisely defined what constitutes *de minimis* physical injury. Case law indicates that a *de minimis* physical injury includes minor cuts and bruises. *Nolin v. Isbell*, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (bruises received during an arrest were non-actionable *de minimis* injury); *Harris*, 190 F.3d at 1286 (holding that a forced "dry shave" was a *de minimis* injury); *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) (finding that a sore, bruised ear persisting for three days was *de minimis*). The instruction uses more than minimal injury, rather than more than *de minimis* injury because it is easier for jurors to understand and conveys the same idea.

The damages limitations under the PLRA apply with equal force to claims by convicted prisoners and pretrial detainees. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1322-25 (11th Cir. 2007) (applying PLRA to § 1983 claim by a pretrial detainee). However, the PLRA does not apply to lawsuits brought by individuals who are no longer in custody. *Napier v. Preslicka*, 314 F.3d 528, 531-34 (11th Cir. 2002).

2.    **Compensatory Damages**

"[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986); *accord Wright v. Sheppard*, 919 F.2d 665, 669 (11th Cir. 1990). Damages may include monetary losses, such as lost wages, damaged property, and future medical expenses. *Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000)).

Damages also may be awarded based on "physical pain and suffering" and "demonstrated . . . impairment of reputation[] and "personal humiliation." *Slicker*, 215 F.3d at 1231. The general rule requiring plaintiffs to mitigate damages applies in actions under 42 U.S.C. § 1983. *See, e.g.*, *Murphy v. City of Flagler Beach*, 846 F.2d 1306, 1309-10 (11th Cir. 1988). Accordingly, the instruction provides an optional bracketed charge regarding mitigation of damages.

"[C]ompensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated." *Slicker*, 215 F.3d at 1229 (emphasis omitted). Consequently, when a plaintiff does not provide any "proof of a specific, actual injury caused by" the defendant's conduct, the plaintiff is not entitled to compensatory damages. *Kelly v. Curtis*, 21 F.3d 1544, 1557 (11th Cir. 1994).

3.     **Nominal Damages**

The instruction reflects the three situations identified in *Slicker*, a non-PLRA case, where an award of nominal damages is appropriate. *Slicker*, 215 F.3d at 1232.

In cases that are not subject to the PLRA, an award of nominal damages may be sufficient to justify an award of punitive damages in a § 1983 action. *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1177-78 & n.3 (11th Cir. 2009) (noting that if plaintiff organization is successful on its claim of a First Amendment violation permitting nominal damages, then "punitive damages may be available" as well); *Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir. 1991) (affirming award of punitive damages even though jury awarded plaintiff nominal damages but not compensatory damages).

4.     **Punitive Damages**

In order to receive punitive damages in § 1983 actions, a plaintiff must show that the defendant's conduct was "motivated by evil motive or intent" or involved "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Punitive damages in § 1983 claims are not recoverable against government entities. *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1047 (11th Cir. 2008). In a case brought against both individuals and government entities, the instructions should expressly state that punitive damages may be assessed only against the individual defendants for their respective conduct.

**Source**: 11th Circuit Pattern Jury Instruction 5.13 Civil Rights – 42 U.S.C. § 1983 Claims – Damages, as modified by replacing "physical" with "mental and emotional" pursuant to the guidance in paragraph 1(d) of the model.

---

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

---

**Annotations and Comments**

No annotations associated with this instruction.

**GROUP V: PUNITIVE DAMAGES AMOUNT PHASE**

On your first verdict form, you indicated that Defendant(s) _____ and/or

_____ were liable for punitive damages. Accordingly, you will now hear

evidence and deliberate as to the appropriate amount of punitive damages to be assessed.

In assessing punitive damages, the law requires the following:

## 8.1 Federal Law of Punitive Damages – Determination of Amount

If you previously found that punitive damages should be assessed, you may consider the evidence regarding Defendant Gaddis's, Defendant Bauman's, or both of their financial resources in fixing the amount of punitive damages to be awarded. [You may also assess punitive damages against one or more of the individual Defendants, and not others, or against one or more of the individual Defendants in different amounts.]

**Source:**

Taken from last paragraph of Eleventh Circuit Pattern Instruction 5.8.5 on Entitlement to punitive damages on Section 1983 claims.

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

79

**<u>Annotations and Comments</u>**

No annotations associated with this instruction.

**8.2    Florida Law Punitive Damages – Determination of Amount**

*c(2).  Punitive damages — determination of amount:*

You are to decide the amount of punitive damages, if any, to be assessed as punishment against [insert name(s) of defendants held liable for punitive damages from verdict form] and as a deterrent to others. This amount would be in addition to the compensatory damages you have previously awarded. In making this determination, you should consider the following:

(A).   the nature, extent and degree of misconduct and the related circumstances, including the following:

i.      whether the wrongful conduct was motivated solely by unreasonable financial gain;

ii.     whether the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from the conduct, was actually known by defendant;

iii.    whether, at the time of Mr. Escaño-Reyes's death, defendant had a specific intent to harm Mr. Escaño-Reyes and the conduct of defendant did in fact harm Mr. Escaño-Reyes, [and]

[(B).  [the financial resources of (defendant(s)); and]*

*Refer to Note on Use 5.*

**[(C).**  (1) the amount reasonable in relation to the harm likely to result from Defendants' conduct as well as the harm that actually has occurred, (2) the degree of reprehensibility of Defendants' conduct, and (3) efforts to conceal Defendants' conduct.]

[However, you may not award an amount that would financially destroy (defendant(s)).]*

*Refer to Note on Use 7.*

You may in your discretion decline to assess punitive damages. [You may assess

punitive damages against one defendant and not the other[s] or against more than one defendant. Punitive damages may be assessed against different defendants in different amounts.]

d.    *Closing instruction, second stage:*

Members of the jury, you have now heard and received all of the evidence on the issue of punitive damages. Your verdict on the issues raised by the punitive damages claim of the Plaintiff against Defendants _____ and/or _____ must be based on the evidence that has been received during the trial of the first phase of this case and on the evidence that has been received in these proceedings and the law on which I have instructed you. In reaching your verdict, you are not to be swayed from the performance of your duty by prejudice or sympathy for or against any party.

Your verdict must be unanimous, that is, your verdict must be agreed to by each of you.

You will be given a form of verdict, which I shall now read to you:

When you have agreed on your verdict, the foreman or forewoman, acting for the

jury, should date and sign the verdict. You may now retire to consider your verdict.

**Source:** Florida Supreme Court Civil Jury Instructions 503.1 Punitive Damages –

Bifurcated Procedure

NOTES ON USE FOR 503.1

1.      This instruction is designed so it can be given before the taking of evidence.
Instruction 503.1a and the applicable part of 503.1b should be given as part of the
general instruction on the case. Instruction 503.1c is designed to be given before the
beginning of stage two of the punitive damages trial. And instruction 503.1d is
designed to be given at the close of the evidence in the stage two proceeding.

2.      Instruction 503.1a should be given in all cases involving bifurcated
proceedings.

Instruction 503.1b(1) should be given when the demand for punitive damages is
based on the conduct of an individual defendant.

Instruction 503.1b(2) should be given when the demand for punitive damages is
based on the conduct of a managing agent or principal. *Bankers Multiple Line
Insurance Co. v. Farish*, 464 So.2d 530 (Fla. 1985). That person should be named
in 503.1b(2). Pending further development in the law, the committee takes no
position regarding whether the independent negligence must be on the part of a
managing agent or principal or whether it can be based on the independent
negligence of another employee. See *Schropp v. Crown Eurocars, Inc.*, 654 So.2d
1158 (Fla. 1995) and *Partington v. Metallic Engineering*, 792 So.2d 498 (Fla. 4th
DCA 2001). In appropriate cases a corporate policy can provide the basis for
punitive damages against a corporation even though the particular officers or agents
of the corporation responsible for the policy are not discovered or identified. See,

*e.g.*, *Schropp* at 1162 (Wells, J. concurring). In those cases, the instruction will need to be modified accordingly.

Instruction 503.1b(3) should be given when there is a demand for punitive damages against an employer/principal based on the conduct of an employee and punitive damages are also being sought against the employee. There may be situations other than employer-employee relationships where vicarious liability for punitive damages may be imposed. See, *e.g.*, *Knepper v. Genstar Corp.*, 537 So.2d 619 (Fla. 3d DCA 1988) (joint venture); *Soden v. Starkman*, 218 So.2d 763 (Fla. 3d DCA 1969) (partnership).

Instruction 503.1b(4) should be given when there is a demand for punitive damages against the employer/principal for the acts of an employee, but the employee is not a defendant or is not being sued for punitive damages.

In cases involving both direct and vicarious liability claims, instructions 503.1b(2) and 503.1c(2) or c(3) should be given with appropriate transitional language with respect to the claims based on vicarious liability. The paragraphs defining "intentional misconduct" and "clear and convincing evidence" are bracketed because, once given, they do not have to be repeated.

3.    Instructions 503.1b(1)–b(4) are designed for use in most common-law tort cases. However, certain types of intentional torts may require a punitive damage charge appropriate to the particular tort. See, *e.g.*, *First Interstate Development Corp. v. Ablanedo*, 511 So.2d 536 (Fla. 1987); *Metropolitan Life Insurance Co. v. McCarson*, 467 So.2d 277 (Fla. 1985). The same may be true when punitive damages are authorized by statute. See, *e.g.*, *Home Insurance Co. v. Owens*, 573 So.2d 343, 346 (Fla. 4th DCA 1990).

4.    It is not the purpose of instruction 503.1c second stage instructions to allow parties to relitigate in the second stage of the bifurcated proceeding, by new evidence or by argument, the underlying question decided in the first stage of the proceeding of whether an award of punitive damages is warranted. Rather, the purpose of instruction 503.1c is to advise the jury that in the second stage of the proceeding, evidence may be presented and argued which will allow the jury in its discretion to determine the amount of an award of punitive damages, and that the amount which the jury determines appropriate could be zero.

5.    Instruction 503.1c(2)(B) should only be used when evidence of a defendant's financial worth is introduced.

6.      Instruction 503.1c(2)(C) should be used only after the court has determined that the evidence includes some additional circumstance that may affect the amount of punitive damages. See, *e.g.*, *Owens-Corning Fiberglas Corp. v. Ballard*, 749 So.2d 483 (Fla. 1999) (listing various such factors). See generally *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). One such circumstance is the assessment of punitive damages against the defendant in prior cases. See *W.R. Grace & Co. v. Waters*, 638 So.2d 502 (Fla. 1994).

7.      This instruction is to be given when requested by the defendant. See *Wransky v. Dalfo*, 801 So.2d 239 (Fla. 4th DCA 2001). It appears that this instruction can only be used when evidence of the defendant's net worth has been introduced. See *Bould v. Touchette*, 349 So.2d 1181 (Fla. 1977); *Rinaldi v. Aaron*, 314 So.2d 762 (Fla. 1975). This instruction is not intended to supplant the court's function in determining whether a verdict is constitutional. See *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). The committee notes that many reported decisions have used alternative terms such as "bankrupt" or "economically castigate" to describe this limitation, instead of or in addition to the term "financially destroy." See, *e.g.*, *Wackenhut Corp. v. Canty*, 359 So.2d 430 (Fla. 1978); *Lehman v. Spencer Ladd's Inc.*, 182 So.2d 402 (Fla. 1966). The committee has selected the term "financially destroy" for its simplicity, but does not intend to foreclose the use of other legally valid terms where appropriate under the facts of the particular case.

**Disposition:**

**Given:**_____

**Rejected:**_____

**Modified:**_____

**Annotations and Comments**

No annotations associated with this instruction.

Respectfully submitted,
Bradford R. Sohn, Esq.
The Brad Sohn Law Firm
2600 Douglas Road, Suite 1007
Coral Gables, Florida 33134
Telephone:  (786) 708-9750
Fax: (305) 397-0650
Email: Brad@Sohn.com

David Pollack, Esq.
Law Office of David H. Pollack,
2600 Douglas Road, Suite 1007
Coral Gables, Florida 33134
Telephone: 305-372-5900
Facsimile: 305-372-5904
Email designations:
david@davidpollacklaw.com
eric@davidpollacklaw.com

BY:  /s/Bradford Rothwell Sohn

BRAD R. SOHN
FLA. BAR NO. 98788

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed via CM/ECF this 1ST day of June, 2021, which will serve all parties of record.

87

BY: /s/Bradford Rothwell Sohn

BRAD R. SOHN
FLA. BAR NO. 98788